**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1416-WJM
Criminal Case No. 13-cr-353-WJM

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.

**DERRICK DESEAN RICHARDSON,**

      Defendant-Movant.

_____

**ORDER DENYING DEFENDANT'S MOTION TO VACATE UNDER 28 U.S.C. § 2255**
_____

Before the Court is Defendant Derrick Richardson's Motion to Vacate Under 28 U.S.C. § 2255.  (ECF No. 44.)  For the reasons explained below, the Court finds that Richardson's sentence should not have been calculated under the assumption that his prior conviction for attempted robbery was a crime of violence.  However, the Court finds this error to be harmless because Richardson also has a prior conviction for use of a stun gun, which qualifies as a crime of violence.  Thus, Richardson's motion is denied.

## I. BACKGROUND

**A.      Richardson's Sentence**

In August 2013, the Government indicted Richardson on one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 2.)  In December of the same year, Richardson pleaded guilty to that count.

(ECF No. 20.)  The Probation Office then prepared a Presentence Investigation Report ("PSIR").

The criminal history portion of Richardson's PSIR noted a prior Colorado state-court conviction for attempted robbery, and for use of a stun gun (specifically, a taser that Richardson discharged in the course of the attempted robbery).  (ECF No. 22 ¶ 36.)  The attempted robbery conviction—but not the stun gun conviction—became part of the basis for the PSIR's conclusion that Richardson's base offense level was 22.  (*Id.* ¶ 17.)  Specifically, the PSIR invoked United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2K2.1(a)(3), which specifies a base offense level of 22 where two conditions are met: first, "the offense [for which the defendant is now being sentenced] involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a)"; and second, "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."[1]  The PSIR found that the handgun Richardson possessed as a felon was a semiautomatic firearm capable of accepting a large capacity magazine, thus satisfying the first condition.  (ECF No. 22 ¶ 17.)  The PSIR found Richardson's attempted robbery conviction was a crime of violence, thus satisfying the second condition.  (*Id.*)[2]

---

[1] Unless otherwise noted, all Guidelines quotations and citations in this order are to the 2013 edition of the Guidelines, which was in effect at the time Richardson was sentenced.  *See* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

[2] Although the Probation Office filed revised PSIRs and various addendums, this portion of the original PSIR was never changed.  (*See* ECF Nos. 30, 31, 40, 41.)

2

Richardson never objected to the PSIR's classification of attempted robbery as a crime of violence.  The Government, for its part, never argued that Richardson's stun gun conviction should also be counted as a crime of violence for sentencing purposes, in addition to the attempted robbery conviction.

Richardson *did* object, however, to the PSIR's analysis of the first condition in § 2K2.1(a)(3), claiming a lack of evidence that the gun he possessed was capable of accepting a large capacity magazine.  (ECF No. 28 at 1–2.)  Richardson also objected that the large capacity magazine enhancement has no rational or empirical basis and therefore § 2K2.1(a)(3) should be entirely disregarded.  (ECF No. 34.)  Thus, he argued, his base offense level should have been 20, as directed by § 2K2.1(a)(4), which requires only a prior conviction for a crime a violence (*i.e.*, his attempted robbery conviction).  (*Id.* at 2.)

At the sentencing hearing, the Court agreed with Richardson's argument that § 2K2.1(a)(3) should be disregarded for lack of empirical grounding.  (*See* ECF No. 43 at 9.)  The Court therefore accepted a base offense level of 20, per § 2K2.1(a)(4).  After various other adjustments, the Court found an offense level of 19 and a criminal history within Category V, yielding a Guidelines range of 57–71 months.  *See* United States Sentencing Commission, *Guidelines Manual* 395 (2013).  The Court granted a 7-month downward variance based on certain criminal history considerations, and ultimately sentenced Richardson to 50 months' incarceration.  (ECF No. 43 at 2.)  Richardson did not appeal.

**B.**     ***Johnson* and *Welch***

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S.

Ct. 2551 (2015).[3]   *Johnson* examined the Armed Career Criminal Act ("ACCA"), which

mandates a 15-year minimum sentence for anyone convicted of felon-in-possession

who "has three previous convictions . . . for a violent felony."  18 U.S.C.  § 924(e)(1).

Specifically at issue in *Johnson* was the ACCA's definition of "violent felony":

> any crime punishable by imprisonment for a term exceeding
> one year . . . if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened
> use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of
> explosives, *or otherwise involves conduct that presents a*
> *serious potential risk of physical injury to another* [.]

*Id.* § 924(e)(2)(B) (emphasis added).

The italicized phrase in clause (ii) is commonly known as the "residual clause,"

while clause (i) is sometimes known as the "elements clause."  All parties in *Johnson*

agreed that whether the defendant, Samuel Johnson, qualified for the mandatory

15-year minimum sentence turned on whether his prior state-law conviction for unlawful

possession of a short-barreled shotgun fell within the residual clause.  *Johnson*, 135 S.

Ct. at 2556.  The Supreme Court held, however, that the residual clause was

unconstitutional: "We are convinced that the indeterminacy of the wide-ranging inquiry

required by the residual clause both denies fair notice to defendants and invites

---

[3] References in this opinion to *Johnson*, without more, are to this *Johnson* decision.
However, the Court will at times refer to this decision as *Samuel Johnson*, to distinguish it from
another Supreme Court *Johnson* decision—*Curtis Johnson*—that also turns out to be relevant
below.

4

arbitrary enforcement by judges.  Increasing a defendant's sentence under the clause denies due process of law."  *Id.* at 2557.

On April 18, 2016, the Supreme Court decided *Welch v. United States*, 136 S. Ct. 1257 (2016).  *Welch* held that *Johnson* announced a "substantive" change in the criminal law and therefore applies retroactively to prisoners who had received the ACCA mandatory minimum sentences on account of an offense that was deemed a "violent felony" due to the residual clause.  *Id.* at 1265.  Thus, via 28 U.S.C. § 2255, those prisoners could collaterally challenge their sentences as unconstitutional.

## C.     Richardson's Petition

Richardson was *not* sentenced under the ACCA.  However, his base offense level was calculated with reference to Guidelines language that is nearly identical to the ACCA's definition of "violent felony."  Specifically, Guidelines § 2K2.1(a)(4)(A) establishes a base offense level of 20 for offenders who have previously committed a "crime of violence," which is defined by cross-reference to § 4B1.2(a).  *See* U.S.S.G. § 2K2.1, Application Note 1.   Section 4B1.2(a), in turn, provided the following definition of "crime of violence":[4]

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

---

[4] This section has since been amended, but, as previously noted, Guidelines ranges are calculated according to the Guidelines in effect at the time the defendant is sentenced.  *See* U.S.S.G. § 1B1.11.

> (2) is burglary of a dwelling, arson, or extortion, involves use
> of explosives, or otherwise involves conduct that presents a
> serious potential risk of physical injury to another.

Save for the addition of "of a dwelling" after "burglary," paragraphs (1) and (2) are

verbatim copies of the corresponding paragraphs in the ACCA's "violent felony"

definition, including both the elements clause and residual clause.

As noted above, the Court accepted that Richardson's prior attempted robbery

conviction was a "crime of violence" under this definition.  The PSIR did not specify the

portion of this definition applicable to Richardson's attempted robbery conviction,

perhaps because § 4B1.2's Application Note 1 states that "'[c]rime of violence' includes

. . . robbery"—although the Application Note likewise fails to explain where robbery

(attempted or otherwise) fits into the definition.

Richardson claims that robbery—and, by extension, attempted robbery—could

only fit under the residual clause.  Richardson further claims that the residual clause is

unconstitutional in light of *Johnson* and *Welch*, and therefore his base offense level

should never have been as high as 20.  Rather, he says, his base offense level should

have been no higher than 14.  *See* U.S.S.G. § 2K2.1(a)(6).  Assuming that base

offense level and holding constant all other sentencing adjustments and departures,

Richardson would have received a sentence of 23 months—an amount of time he has

already served.

## II.  ANALYSIS

### A.    Preliminary Matters

Richardson's petition raises three basic questions:

- First, did *Johnson* announce a substantive rule of criminal law specific to the residual clause in the ACCA, or is *Johnson*'s holding also applicable to other instances of the same clause, such as in Guidelines § 4B1.2(a)?

- Second, assuming the residual clause is excised from § 4B1.2(a)(2), does Richardson's attempted robbery conviction still qualify as a crime of violence under any other portion of § 4B1.2(a), such as the elements clause?

- Third, assuming the answer to the foregoing question is no, can Richardson's stun gun conviction replace the attempted robbery conviction as the predicate crime of violence, thus leaving his sentence undisturbed?  In other words, was the Court's reliance on the attempted robbery conviction harmless error because the stun gun conviction would have led to the same result?

The Court has already thoroughly addressed the first question and most of the second question in *United States v. Durete*, ___ F. Supp. 3d ___, 2016 WL 5791199 (D. Colo. Sept. 13, 2016), *appeal docketed*, No. 16-1439 (10th Cir., Nov. 1, 2016).  In sum, the Court held in *Durete*:

- Procedurally, a § 2255 petitioner is not barred from bringing a *Johnson*-based § 2255 petition simply because the petitioner failed to challenge the Guidelines § 4B1.2(a)'s residual clause in a direct appeal from his or her conviction, *id.* at *9 n.10; and on the merits, *Johnson* announced a substantive rule of criminal law applicable to other instances of similar

language, including the residual clause in Guidelines § 4B1.2(a).  *Id.* at
*9–10.

- A conviction for simple robbery under Colorado law is not a "crime of violence" for purposes of § 4B1.2(a)'s elements clause.  *Id.* at *3–9.

The only portion of the second question that these holdings does not resolve is whether *attempted* simple robbery (for which Richardson was convicted) could somehow be a crime of violence when fully realized simple robbery is not.[5]  The Court has not received, nor could the Court itself discern, any logical argument how this could possibly be the case.  Accordingly, the Court holds that attempted simple robbery in Colorado is not a "crime of violence" for purposes of § 4B1.2(a)'s elements clause.

## B.    Harmless Error

The foregoing establishes that it was error for this Court to accept Richardson's attempted robbery conviction as the crime of violence predicate under Guidelines § 4B1.2(a).  The Court must therefore address the third question: whether this error was harmless.  *See United States v. Dago*, 441 F.3d 1238, 1245–46 (10th Cir. 2006) (harmless error applies to § 2255 proceedings).  More specifically, can Richardson's stun gun conviction satisfy the crime of violence predicate in place of attempted robbery?

---

[5] The parties agree that the relevant robbery statute is Colorado Revised Statutes § 18-4-301.  (*See* ECF No. 44 at 5; ECF No. 48 at 13.)  This is the same statute the Court interpreted in *Durete*.  *See* 2016 WL 5791199, at *3–9.

8

1.    <u>Waiver</u>

Richardson argues that the PSIR "declined to find that the conviction for use of a stun gun was a 'crime of violence,' and the Government failed to object and argue that the stun-gun conviction should have so qualified.  The Government has, thus, forfeited this argument . . . ."  (ECF No. 51 at 2–3.)  The Court disagrees.

First, no version of or addendum to the PSIR affirmatively "declined to find that the conviction for use of a stun gun was a 'crime of violence.'"  (*See generally* ECF Nos. 22, 30, 31, 40, 41.)  Rather, the stun gun conviction is simply not mentioned in the paragraph establishing Richardson's base offense level.  (*See* ECF No. 22 ¶ 17.)  In other words, the PSIR takes no position either way whether use of a stun gun is a "crime of violence."

Second, although it is true that the Government never argued that the stun gun conviction should also be deemed a crime of violence for purposes of calculating the base offense level, the Court holds that the Government had no such duty, at least under these circumstances.  Such an argument would have been purely "belt and suspenders," given that: (1) only one crime of violence is needed to merit the base offense level stated in Guidelines § 2K2.1(a)(3) and (4); and (2) before *Johnson*, robbery was almost indisputably within the meaning of "crime of violence."  *See* U.S.S.G. § 4B1.2, Application Note 1 ("'Crime of violence' includes . . . robbery . . . .").[6]

---

[6] Effective August 1, 2016, "robbery" became an enumerated "crime of violence" in the text of § 4B1.2(a)(2) itself, as opposed to in the Application Note.  *See* United States Sentencing Commission, *Supplement to the 2015 Guidelines Manual* 5 (2016), *available at* http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2015/GLMSupplement.pdf (last accessed Nov. 3, 2016).  Assuming that simple robbery in Colorado equates to generic robbery as now enumerated in § 4B1.2(a)(2), this Court could not apply the amended Guideline to

Moreover, Richardson never objected to the PSIR's treatment of attempted robbery as a crime of violence for sentencing purposes.

In such circumstances, the Court is loathe to impose a requirement that the Government must nonetheless ask this Court to determine the crime-of-violence status of every possible predicate offense.  Assuming without deciding that such determinations would not be advisory opinions, such a requirement would, in most cases, be a waste of the parties' and the Court's limited time and resources.  Moreover, it would run contrary to the normal presumption that prevailing parties may defend a judgment on any adequate grounds evident in the record.  *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (stating, in a direct appeal context, "This reluctance to command do-overs in the district court is also why we treat arguments for *affirming* the district court differently than arguments for *reversing* it.  We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." (emphasis in original)); *see also United States v. Taylor*, 98 F.3d 768, 774 (3d Cir. 1996) (holding, in a direct appeal context, that the defendant's sentence would be affirmed because a prior conviction allegedly not considered by the district court nonetheless self-evidently met the "crime of violence" definition).

Accordingly, the Government did not forfeit its current stun gun argument by failing to raise it prior to Richardson's sentencing.

---

Richardson's attempted robbery conviction because it would lead to a sentencing enhancement based on law that did not exist at the time of his crime, in violation of the Constitution's *ex post facto* clause.  *See* U.S.S.G. § 1B1.11(b)(1).

2.   Use of a Stun Gun as a "Crime of Violence"

The Court now turns to the question of whether Richardson's stun gun conviction qualifies as a crime of violence for purposes of Guidelines § 4B1.2(a).

a.   *The Categorical Approach*

The Tenth Circuit prescribes the "categorical approach" to determine whether an offense is a crime of violence as that term is defined in § 4B1.2(a).  *See United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010).  Under this approach, the sentencing court "looks to the words of the statute and judicial decisions interpreting it, rather than to the conduct of any particular defendant convicted of the crime."  *Id.*  In other words, a court must look to "the least of the[] acts" that could be prosecuted under the relevant statute.  *Curtis Johnson v. United States*, 559 U.S. 133, 137 (2010).  The court then inquires whether that minimum conduct meets the Guidelines definition of a crime of violence.

In this light, it bears noting that, at the time Richardson was sentenced, § 4B1.2(a)'s "crime of violence" definition would have read as follows without the residual clause:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, or involves use of explosives.

No party disputes that Richardson's stun gun conviction was "punishable by imprisonment for a term exceeding one year."  In addition, no party argues that

11

Richardson's stun gun conviction equates to "burglary of a dwelling, arson, or extortion, or involves use of explosives." Accordingly, his stun gun conviction qualifies as a crime of violence only if the stun gun statute under which Richardson was convicted "has as an element the use, attempted use, or threatened use of physical force against the person of another."

        b.    *"Physical Force"*

Before turning to that stun gun statute, the Court must define "physical force against the person of another." Richardson and the Government agree that the proper definition comes from the Supreme Court's *Curtis Johnson* decision. (ECF No. 44 at 8–9; ECF No. 48 at 13–14.) *Curtis Johnson*, like *Samuel Johnson*, construes the ACCA's definition of "violent felony." *Curtis Johnson*, 559 U.S. at 135. At issue in *Curtis Johnson*, however, was the elements clause, *i.e.*, the portion of the definition regarding offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The question before the Supreme Court was whether Curtis Johnson's prior conviction for simple battery under Florida law satisfied the "physical force" requirement, 559 U.S. at 136, particularly given the Florida Supreme Court's holding that Florida's simple battery offense may be committed "by any intentional physical contact, no matter how slight. The most nominal contact, such as a tap on the shoulder without consent, establishes a violation," *id.* at 138 (internal quotation marks and citations omitted; alterations incorporated).

In light of this holding, the U.S. Supreme Court in turn held that simple battery in Florida does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). This is because, for purposes of § 924(e)(2)(B)(i), "'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140. It requires "a substantial degree of force," or "strong physical force," akin to that required for offenses such as "forcible rape" or "assault and battery with a dangerous weapon." *Id.* at 140–41 (internal quotation marks omitted).

Again, both Richardson and the Government agree that *Curtis Johnson* sets the standard for § 4B1.2(a)(1)'s identical elements clause: "has as an element the use, attempted use, or threatened use of physical force against the person of another." The Court likewise agrees. Accordingly, the Court must apply *Curtis Johnson*'s definition of "physical force" when examining whether Colorado's stun gun statute describes a crime of violence under the elements clause.

### c.    *"Use of a Stun Gun" Under Colorado Law*

The parties appear to agree Richardson's stun gun conviction was specifically a conviction under Colorado Revised Statute § 18-12-106.5: "A person commits a class 5 felony if he knowingly and unlawfully uses a stun gun in the commission of a criminal offense." Elsewhere in the statute, "stun gun" is defined as "a device capable of temporarily immobilizing a person by the infliction of an electrical charge." Colo. Rev. Stat. § 18-12-101(1)(i.5).

Richardson does not argue that a stun gun cannot create the sort of physical force required under *Curtis Johnson*.  He instead argues that the word "uses" in the definition of the crime means that a person can violate the statute employing no physical force at all: "a defendant who swapped a stun gun for drugs would be guilty of using a stun gun within the meaning of § 18-12-106.5."  (ECF No. 51 at 3.)  Thus, he says, the statute does not have as a necessary element the use, attempted use, or threatened use of physical force.

In support, Richardson cites *Smith v. United States*, 508 U.S. 223 (1993).  The defendant in *Smith* had offered to trade a fully automatic pistol for cocaine, *id.* at 225–27, and he thereby received a thirty-year mandatory minimum sentence for violating 18 U.S.C. § 924(c)(1)(A) and (B)(ii): "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm * * * shall be sentenced to a term of imprisonment of not less than 30 years" if the firearm "is a machinegun."  The defendant argued that "uses" within this statute cannot refer to using a firearm for barter, but the Supreme Court disagreed.  Using dictionary definitions of "use," the Court found that the defendant "'used' or 'employed' [the firearm] as an item of barter to obtain cocaine; he 'derived service' from it because it was going to bring him the very drugs he sought."  *Id.* at 229.  The Court therefore affirmed his conviction.

The *Smith* decision is inapposite.  There is no indication that Colorado's stun gun statute was modeled on the statute at issue in *Smith*, or on any other federal statute.  Unless a Colorado statute is self-consciously modeled on a federal statute, the U.S. Supreme Court's interpretation of a term in a federal statute does not directly inform

14

how a Colorado court would interpret the same term in a Colorado statute. *Smith* provides, at best, minimal guidance on how this Court might predict the construction that a Colorado court would put on "uses" in Colorado's stun gun statute, if this Court was working from a clean slate.

A clean slate does not exist here, however. The Colorado Court of Appeals extensively discussed the meaning of "uses" in the Colorado stun gun statute in *People v. Wheeler*, 170 P.3d 817 (Colo. App. 2007). The defendant, Kenneth Wheeler, had "threatened three other students with a stun baton and prevented two of them from leaving his dormitory room." *Id.* at 818. He was therefore convicted of violating the stun gun statute because he had used the stun baton "in the commission of a criminal offense," Colo. Rev. Stat. § 18-12-106.5, namely, false imprisonment (among other offenses). *See Wheeler*, 170 P.3d at 818. But Wheeler had not actually attacked anyone with his stun baton: "Although the evidence show[ed] that defendant activated the stun baton in the victims' presence, the [state] concede[d] that defendant did not touch or attempt to touch either of them with it." *Id.* Wheeler therefore argued that he could not be said to have "used" a stun gun as allegedly contemplated by the statute. *Id.* at 819. In other words, according to Wheeler, "use" must mean "discharge."

The Colorado Court of Appeals disagreed. Like the U.S. Supreme Court in *Smith*, the court in *Wheeler* began with dictionary definitions. Unlike *Smith*, however, the court quickly settled on two possible definitions, both of which are too narrow to encompass using a stun gun as barter:

> The term "use" has multiple dictionary definitions, including: "something that fills a need or gives a benefit or advantage";

15

"to observe or follow a custom"; "to make familiar by repeated or continued practice or experience"; and "to put into action or service." *Webster's Third New International Dictionary* 2524 (1986). Thus, the statute could reasonably be interpreted as prohibiting, in the commission of a crime, (1) only discharge of a stun gun ("put into action"), or (2) threatening display of a stun gun ("gives a benefit or advantage") as well.

*Id.* at 820.

The court settled on the second definition as the most appropriate, and in doing so, employed language that appears to support Richardson's argument. Most notably, the court declared that the stun gun statute "unambiguously creates a separate crime whenever a stun gun *facilitates commission of the predicate offense*, whether or not [the stun gun] is discharged." *Id.* (emphasis added). Standing alone, this construction is perhaps broad enough to encompass Richardson's stun-gun-for-drugs hypothetical. But in context, the court's meaning is plainly connected to the definition the court selected. Every example the Court of Appeals provided of "facilitating" a predicate offense was an example of threatening behavior, *i.e.*, using a device to "cause[] the other person to fear for his safety." *Id.* (internal quotation marks omitted). Under this construction, the stun gun statute would at least "ha[ve] as an element the . . . threatened use" of force. U.S.S.G. § 4B1.2(a)(1).

In fairness, there is no indication that the court in *Wheeler* was presented specifically with an argument that "uses" might also encompass bartering for a contraband article or substance. Thus, the court may have focused on threatening behavior because that was as far as it needed to go to sustain the defendant's conviction, not because it considered threatening behavior to be the outer limit of

conduct that could sustain a conviction.  Even so, when applying the categorical approach, this Court must account for Colorado courts' interpretations of Colorado statutes.  *Wise*, 597 F.3d at 1144.  Accepting that *Wheeler* was not presented with Richardson's precise hypothetical, the Court nonetheless concludes that the best interpretation of "uses," in light of the available authorities, is that it would not apply to non-dangerous behavior, such as bartering.  Rather, to be convicted under Colorado's stun gun statute, it appears that a person must at least use the stun gun in a threatening manner.  Moreover, as noted, Richardson does not challenge the "physical force" element of Guidelines § 4B1.2(a)(1).  Thus, the stun gun statute (Colo. Rev. Stat. § 18-12-106.5) "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  A Colorado conviction for use of a stun gun is therefore a conviction for a crime of violence under § 4B1.2(a)(1).

In this light, adopting a base offense level of 20 based on Richardson's attempted robbery conviction was harmless error because Richardson would have received the same base offense level on account of his stun gun conviction.

### III.  CONCLUSION

For the reasons set forth above, Richardson's Motion to Vacate Under 28 U.S.C. § 2255 (ECF No. 44) is DENIED.

Dated this 8th day of November, 2016.

BY THE COURT:

William J. Martinez
United States District Judge